Ingrid A.M. FRANCIS and Robert
Francis, Plaintiffs,
Appellants,

v.

David GOODMAN and Karen Dunnett,
Defendants, Appellees.

No. 95–1933.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1996.

Decided April 3, 1996.

Loretta M. Smith, with whom Charles A. Goglia, Jr., Wellesley, MA, and William E. Ryckman, Jr., Boston, MA, were on brief, for appellants.

Hilary B. Miller, Greenwich, CT, for appellees.

TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

After plaintiff-appellant Ingrid Francis ("Francis"), a Massachusetts *citizen*, instituted this malpractice action in Nantucket Superior Court, defendant Ira Rose, Esquire, a Massachusetts *resident* now deceased, removed it to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 1332(a)(1) (diversity jurisdiction) and 1441(a) (1994) (removal).[1] Francis promptly moved for remand, *see* 28 U.S.C. § 1447(c) (1994), on the ground that both parties were Massachusetts *citizens*, and requested oral argument on her motion. Rose opposed the motion for remand and requested an evidentiary hearing. On the exclusive basis of the parties' written submissions, which included conflicting documentary evidence, the district court (Harrington, J.) denied the motion for remand in a margin order, without elaboration.

## I

## BACKGROUND

The jurisdictional dispute below centered on whether Rose intended to remain a citizen of New York even though he had relocated to Nantucket, established a law practice, and resided continually on the island from 1987 until his death in 1995. Following the denial of the motion for remand, the action proceeded to trial before United States District Judge Reginald C. Lindsay, sitting without a jury. After Francis rested her case in chief, the trial judge found that she had not established an attorney-client relationship with Rose at the time he gave her the advice alleged as the basis for the malpractice claim. As this finding undermined the malpractice claim, the district court entered judgment for defendant Rose.

Francis appeals both the district court ruling denying the motion to remand for lack of diversity jurisdiction and its ruling on the merits. As she did below, Francis contends that both she and Rose were Massachusetts citizens at all relevant times, and that the absence of diverse citizenship necessitated remand to the superior court pursuant to 28 U.S.C. § 1447(c). Due to the absence of any factual findings or conclusions of law underpinning the implicit district court ruling that Rose was a New York citizen, we remand to the district court for further proceedings.

## II

## *DISCUSSION*

We begin with first principles central to our federal system. The judicial power of the lower federal courts derives from Article III of the United States Constitution and various Acts of Congress: U.S. Const. art. III, §§ 1, 2; *see Casas Office Mach. v. Mita Copystar Am.*, 42 F.3d 668, 674 (1st Cir. 1994). As diversity of citizenship is the sole basis for invoking subject matter jurisdiction in the present case, without a preponderance of evidence establishing diversity the district court would lack judicial power to adjudicate this controversy under section 1332(a)(1). *Bank One, Tex., N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir.1992), *opinion after remand*, 974 F.2d 220 (1st Cir.1992); *Mansfield, Coldwater & Lake Mich. Ry. v. Swan*, 111 U.S. 379, 381–82, 4 S.Ct. 510, 511–12, 28 L.Ed. 462 (1884).

The uncontested evidence revealed that Rose was born in the State of New York,

---

1. Although defendants-appellees David Goodman and Karen Dunnett, executors of the Rose estate, were substituted as defendants, we refer throughout to Rose. In addition, since plaintiff-appellant Robert Francis, Ingrid's son, is a Massachusetts citizen as well, our discussion of their jurisdictional claim mentions only Ingrid Francis.

where he was domiciled for most of his life, and that he continued to maintain significant ties with New York throughout the time he resided in Massachusetts from 1987 until his death in 1995. As it is undisputed that Francis is a Massachusetts citizen, her motion for remand necessitated a district court determination regarding Rose's intention to change his domicile from New York to Massachusetts, *see Montle*, 964 F.2d at 50 (describing shifting burdens and the elements of proof required to establish a change of domicile), as a prerequisite to its subject matter jurisdiction. Although the documentation and argumentation submitted in writing by the parties below conflicted sharply, the district court denied the motion by margin order, without oral argument or an evidentiary hearing, and made neither findings of fact nor subsidiary conclusions of law from which a reviewing court might discern either the documentary evidence or the argumentation relied upon in resolving the central question: whether Rose intended to abandon his New York domicile in favor of a Massachusetts domicile notwithstanding the countervailing evidence. *See id.* at 53–54.

■ At oral argument on appeal, Rose's counsel acknowledged that factual findings regarding Rose's domiciliary intentions would be helpful, but suggested that we might alter the standard of review to compensate for their absence. Ordinarily, of course, the factual findings underlying a district court ruling on citizenship under 28 U.S.C. § 1332(a)(1) are reviewed for clear error. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 11 (1st Cir.1991). Thus, the suggestion that we instead engage in *de novo* review runs directly counter to Fed.R.Civ.P. 52(a): "Findings of fact, whether based on oral or documentary evidence, *shall not be set aside unless clearly erroneous....*" (emphasis added), as well as Supreme Court precedent, *Maine v. Taylor*, 477 U.S. 131, 145, 106 S.Ct. 2440, 2450, 91 L.Ed.2d 110 (1986) ("As this Court frequently has emphasized, appellate courts are not to decide factual questions *de novo*, reversing any findings they would have made differently."), *rev'g United States v. Taylor*, 752 F.2d 757 (1st Cir.1985). *See also* Fed.R.Civ.P. 52(c).

■ The second obstacle is that the margin order is not amenable to reliable appellate review under any standard, since the findings of fact and subsidiary conclusions of law are not discernible. Consequently, the suggestion that we conduct plenary review would dispense entirely with trial court findings and conclusions. The Supreme Court, on the other hand, has cautioned against independent factfinding by the courts of appeals in the context of Rule 52. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986): "If the Court of Appeals believed that the District Court had failed to make findings of fact essential to a proper resolution of the legal question, it should have remanded to the District Court to make those findings."

This is not the first time we have addressed the importance of adequate trial court findings and subsidiary conclusions in the diversity context. In *Media Duplication Serv. v. HDG Software*, 928 F.2d 1228, 1231 (1st Cir.1991), for example, the district court denied, by endorsement, a motion to dismiss for lack of subject matter jurisdiction. On appeal, the party asserting federal jurisdiction was deprived of its judgment on the merits because "the district court's bare, unexplained denial of the motion to dismiss for lack of subject matter jurisdiction [did] not provide a basis to evaluate the factual grounds for its decision." *Id.* at 1237; *see also Halleran v. Hoffman*, 966 F.2d 45, 47 (1st Cir.1992) (citing with approval *Shahmoon Indus. v. Imperato*, 338 F.2d 449, 452 (3d Cir.1964) (remanding for "appropriate findings and conclusions" as to diverse citizenship in light of conflicting evidence)).

■ More particularly, in *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir.1979), we suggested that a diversity ruling may implicate Fed.R.Civ.P. 52(a) ("In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon...."). Although Rule 52(a) goes on to state that such findings and conclusions are not necessary when the district court acts on a Rule 12 or a Rule 56 motion, this provision excepts final disposi-

tions made on partial findings under Rule 52(c), *see* Fed.R.Civ.P. 52(c) & Fed.R.Civ.P. 52(c) advisory committee's note to 1991 amendment, and we now hold that the final sentence of Rule 52(a) does not dispense with the requirement that the trial court make not only special findings as to the relevant disputed facts, but also subsidiary conclusions of law, as necessary to enable effective appellate review of rulings on motions to dismiss for lack of subject matter jurisdiction. *See Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 424 n. 3 (1st Cir.1961) (noting that the last sentence of Rule 52(a) was "either poorly worded" or "too broad"); *see also* 5A James W. Moore, *Moore's Federal Practice* ¶ 52.08 at 52–156–58 (2d ed. 1995) (comparing Rule 52(c) and Rule 12 motions encompassing disputed issues of fact).

As we have observed on several occasions, "some explication of the trial court's reasoning will often prove valuable to both the litigants and to the reviewing court." *Souza v. Pina*, 53 F.3d 423, 424 n. 4 (1st Cir.1995) (failure to state a claim upon which relief may be granted); *see also Roque–Rodriguez v. Lema Moya*, 926 F.2d 103, 105 n. 3 (1st Cir.1991) (summary judgment). When a contested issue as sensitive and dispositive as the subject matter jurisdiction of the federal forum in a removed action is at stake, it will be the unusual case in which findings of fact and conclusions of law are unnecessary to enable effective appellate review. *See Getty Oil, Div. of Texaco v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1260 (5th Cir.1988). This is not such a case.

First of all, even now the parties do not agree as to all relevant historical facts and there can be no question that the district court is better situated and equipped to engage in the required factfinding. *See Montle*, 964 F.2d at 51–55 (discussing broad trial court discretion to determine appropriate

procedures for resolving jurisdictional disputes). Second, were we to displace the district court from its factfinding role, *but see Taylor*, 477 U.S. at 145, 106 S.Ct. at 2450, there would be no appellate review as of right. *Cf.* 28 U.S.C. § 1254(1) (1994); Sup. Ct.R. 10.1 (listing general considerations for granting writ of certiorari).

■ The final argument advanced by Rose is that the district court judgment should be affirmed in the interests of judicial economy and minimizing litigation costs. Not only do these considerations, important as they are, not override those discussed above, but federal courts are not at liberty to overlook limitations on their subject matter jurisdiction. *Mansfield*, 111 U.S. at 382, 4 S.Ct. at 511 ("[T]he rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act."); *see also, e.g., In re Unanue Casal*, 998 F.2d 28, 30–31 (1st Cir.1993) (inquiring *sua sponte* into appellate jurisdiction); Fed.R.Civ.P. 12(h)(3) (court shall dismiss action whenever it appears that subject matter jurisdiction is lacking).[2]

## III

### CONCLUSION

The district court judgment is vacated and the case is remanded for further proceedings consistent with this opinion. The district court may permit the parties to submit additional evidence, as appropriate, and determine whether or not to entertain argument

---

2. We have given consideration to bypassing the jurisdictional question entirely, in the manner employed by the Supreme Court in *Norton v. Mathews*, 427 U.S. 524, 530–32, 96 S.Ct. 2771, 2774–75, 49 L.Ed.2d 672 (1976); *see also Lambert v. Kysar*, 983 F.2d 1110, 1118 n. 11 (1st Cir.1993) ("we repeatedly have held that complex jurisdictional issues may be bypassed in circumstances where it is clear that the party challenging jurisdiction will prevail on substan-

tive grounds in any event."); *Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 223–24 n. 9 (1st Cir.1995). We decline to do so, since Francis is the party challenging federal-court subject matter jurisdiction, and we are not prepared to venture whether the district court clearly erred in rejecting the malpractice claim on the merits. *See also Getty Oil*, 841 F.2d at 1260–61 n. 8 (noting that *Norton* presented a question of federal law).

or conduct an evidentiary hearing. *See Montle*, 964 F.2d at 54–55. The proceedings on remand should be completed, together with the required findings of fact and conclusions of law regarding the diversity of the parties, within 90 days. *Id.* at 55. The district court's findings and conclusions may be brief, *see Lundquist*, 946 F.2d at 10, provided they are sufficiently precise and detailed to enable effective appellate review. *See Keller v. United States*, 38 F.3d 16, 24–25 (1st Cir. 1994).

We retain appellate jurisdiction awaiting the decision on remand. *Montle*, 964 F.2d at 55. Should the district court determine that diversity jurisdiction is lacking, it should remand the case to the superior court and that will end its odyssey in federal court. *Things Remembered, Inc. v. Petrarca*, —— U.S. ——, ——, 116 S.Ct. 494, 497, 133 L.Ed.2d 461 (1995) (discussing 28 U.S.C. § 1447(d)); *Halleran*, 966 F.2d at 48. Otherwise, it may enter judgment for Rose on the merits, and we will revisit Francis' assignments of error. The parties shall bear their own costs in this appeal.

*SO ORDERED.*